**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

LINDA TAYLOR,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

1:18-cv-11534-NLH

**OPINION**

**APPEARANCES:**

LINDA TAYLOR
1021 SPRUCE STREET
CAMDEN, NJ 08103

    *Plaintiff appearing pro se*

KATIE M. GAUGHAN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of

("SSI")[2] under Title II and Title XVI of the Social Security Act. 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, July 21, 2009.[3]

For the reasons stated below, this Court will affirm the ALJ's decision as to the resolution of Plaintiff's disability claim. Plaintiff's race discrimination claims will be dismissed.

---

quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] Plaintiff also asserted claims that the Social Security Administration, two administrative law judges, and a vocational expert discriminated against her because of her race. The Court reviewed Plaintiff's complaint, which it was required to do pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) because she is proceeding without prepayment of fees. The Court noted several deficiencies with those claims, and afforded Plaintiff twenty days to file an amended complaint to correct those deficiencies. The Court stayed Plaintiff's social security appeal pending the filing of Plaintiff's amended complaint, or the expiration of the twenty-day time period. (Docket No. 32, 33.) Plaintiff's amended complaint was due on July 26, 2019, but she has failed to file an amended complaint or otherwise contact the Court. The Court will therefore consider on the merits both Plaintiff's social security appeal and of the viability of Plaintiff's race discrimination claims as currently pled.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

On June 12, 2014, Plaintiff, Linda Taylor, protectively filed an application for SSI and DIB,[4] alleging that she became disabled as of July 21, 2009.[5]  Plaintiff claims that she can no longer work at her previous jobs as a garment sorter and a hotel housekeeper because she suffers from numerous impairments, including left shoulder degenerative joint disease, degenerative disc disease, Sjogren's syndrome,[6] depression, anxiety, and post-traumatic stress disorder.

After Plaintiff's initial claim was denied on December 23, 2014, and upon reconsideration on April 23, 2015, Plaintiff requested a hearing before an ALJ, which was held on August 11,

---

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Plaintiff states that she filed a previous claim for SSI and DIB in Florida on December 7, 2009, claiming the same alleged disability onset date of July 21, 2009.  (Docket No. 15 at 2.)  That application was denied initially on February 8, 2010, and a hearing before an ALJ was held on June 3, 2010.  (Id.)  It is unclear what occurred after that date, but it is evident that Plaintiff's application was ultimately denied.  Plaintiff claims in the instant appeal of her second claim, which was filed in New Jersey, that the SSA committed error on her first claim.  The Court will address this argument below.

[6] Sjögren's is a systemic autoimmune disease that affects the entire body.  Along with symptoms of extensive dryness, other serious complications include profound fatigue, chronic pain, major organ involvement, neuropathies and lymphomas.  See https://www.sjogrens.org/.

2017. On September 13, 2017, the ALJ issued an unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on May 5, 2018, making the ALJ's September 13, 2017 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative

> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).

In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB and SSI**[7]

---

[7] The standard for determining whether a claimant is disabled is the same for both DIB and SSI. See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599. Parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. §

6

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[8] for determining disability that require application of a five-step

---

416.945). The Court will provide citations only to the DIB regulations. See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (because the law and regulations governing the determination of disability are the same for both DIB and SSI the Court provided citations to only one set of regulations).
[8] The regulations were amended for various provisions effective March 27, 2017. See 82 F.R. 5844. Neither party states that any of the amendments impact Plaintiff's appeal.

7

sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving

that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of left shoulder degenerative joint disease, degenerative disc disease, and Sjogren's syndrome were severe. At step three, the ALJ determined that neither Plaintiff's severe impairments nor her severe impairments in combination with her other impairments equaled the severity of one of the listed impairments. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain restrictions. After considering a vocational expert's testimony, the ALJ concluded that Plaintiff's RFC enabled her to perform her past relevant work as a hotel housekeeper and garment sorter as she previously performed those jobs (step four).[9]

---

[9] Because the ALJ concluded that Plaintiff was capable of performing her past relevant work, the ALJ did not need to

9

In making his decision, the ALJ considered Plaintiff's testimony and the medical evidence, which showed:

- No limitation in Plaintiff's cognition – i.e., understanding, remembering, or applying information.

- Mild limitation in Plaintiff interacting with others.

- Mild limitation in Plaintiff concentrating, persisting, or maintaining pace.

- No limitation in Plaintiff adapting or managing herself.

- Plaintiff cooks, does laundry, cleans, drives, shops in stores, pays bills, and goes out to lunch with her daughter.

- The record shows normal walking and no motor defects.

- Tests show full strength.

- Records show conservative shoulder treatment that did not include surgery.

- Records show conservative mental health treatment that did not include counseling, therapy, and psychiatry treatment.

(R. at 19-22.)

---

continue to step five of the sequential step analysis. <u>Benjamin v. Commissioner of Social Security</u>, 2019 WL 351897, at *4 n.9 (D.N.J. 2019) (citing <u>Valenti v. Commissioner of Social Sec.</u>, 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. § 404.1520(b)-(f)).

Plaintiff has asserted numerous arguments for the reversal of the ALJ's decision. Viewing the *pro se* Plaintiff's submissions liberally,[10] the Court construes Plaintiff to be asserting three categories of challenges. The first category is Plaintiff's overall disagreement with the ALJ's assessment of the record evidence and Plaintiff's testimony and his conclusion that Plaintiff was capable of working at the light exertional level. This amounts to a general disagreement with the ALJ's decision rather than a lack of record evidence to support his decision. Plaintiff's feeling that the ALJ's decision was wrong - without more - is insufficient to show that the ALJ's decision was not supported by substantial evidence. See, e.g., Perkins v. Barnhart, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); Moody v. Commissioner of Social Security Administration, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); Grille v. Colvin, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement

---

[10] *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 107 (1976).

with the ALJ's ultimate decision, which is insufficient to overturn that decision.").

The next challenge to the ALJ's decision is in regard to a letter Plaintiff wrote to her former employer dated July 21, 2009, which is the date that serves as Plaintiff's alleged disability onset date. Plaintiff contends that the ALJ mischaracterized this letter by viewing it as her resignation from her housekeeper position at the Holiday Inn. Plaintiff contends that she was terminated.

The Court finds that the ALJ did not err in characterizing Plaintiff's letter to the Holiday Inn, but even if he did, such an error had no impact on the assessment of Plaintiff's disability claim. Plaintiff relates in the letter that she is no longer able work as a full-time employee due to her health, and requests that she only be scheduled to work two to three days a week until she can return to a full-time schedule. (R. at 357.) At the hearing, Plaintiff's counsel stated that Plaintiff was fired from each of her jobs because she was not doing them up to par, to which the ALJ responded, "Well actually, I've got the letter where she resigned from the Holiday Inn." (R. at 37.) Plaintiff responded, "I didn't resign. They fired me." (Id.) The ALJ responded that he understood that Plaintiff was having problems at the time. (R. at 38.)

The Court accepts Plaintiff's representation that she was terminated from the Holiday Inn, either because a part-time schedule was not amenable to her employer or for some other reason.[11] Plaintiff, however, does not articulate how any mischaracterization of the letter affected the ALJ's overall assessment of her impairments. To the contrary, the ALJ plainly acknowledged Plaintiff's self-professed inability to work full-time due to her impairments but ultimately determined that her alleged limitations were not supported by the medical evidence. Thus, the Court finds that the ALJ's characterization of the July 21, 2009 letter is of no moment much less reversable error.

Plaintiff's third challenge is to the SSA disability claim process as a whole. Plaintiff argues that she was not treated

---

[11] The Court notes that in an April 30, 2019 letter to the Court, Plaintiff relates:

> My letter dated July 21, 2009, was only a follow-up letter from a conversation that my former supervisor who observe the problems that I was having doing the job requirements work. She stated that Ms. Taylor maybe you should work 2 or 3 days week I agreed with her because my health has been affected and I provided her document regarding my lifting restrictions. Also my letter shows that I was injured, and I no longer work as a fulltime employee. Also I believe once the employer became aware of my medical condition and that I could no longer do the job requirements and I believe the employer terminated me by use the laid off status. I started my disability application on 12/7/09 because I knew that I was no longer able to work and I was going to relieve myself from the job.

(Docket No. 29 at 1.)

13

fairly by the SSA during her first disability claim in Florida. Plaintiff further argues that the SSA does not treat people equally and she was discriminated against because of her race. Plaintiff contends, "SSA [has] broken the laws on a regular bas[is]," and "SSA officials have been stalking her, harassing her, and recording her."[12] (Docket No. 15 at 3.)

To the extent that Plaintiff advances this argument as a basis to reverse the ALJ's decision on her current claim, such an argument may be cognizable under the law. See Hummel v. Heckler, 736 F.2d 91, 93-94 (3d Cir. 1984) (quoting 20 C.F.R. § 416.1440 ("'An administrative law judge shall not conduct a

---

[12] Plaintiff also argues that the SSA has failed to provide her with a copy of the audio recording of the hearing. Defendant acknowledges this in her brief, and notes that Plaintiff cites to the administrative record in her brief, and therefore assumes Plaintiff has a copy of the administrative record. Defendant has attached a copy of the written transcript for Plaintiff if she does not have a copy of it. (Docket No. 21 at 7; Docket No. 21-2.) The Court notes that according to the SSA's Program Operations Manual System ("POMS"):

> SSA makes an audio record of all hearings. The claimant or appointed representative can receive a copy of the recording. A transcript of the hearing can be prepared from the recording. Send requests for transcripts or recordings to the Office of Hearings Operations (OHO),
>
> > 1 Skyline Tower,
> > 5107 Leesburg Pike,
> > Falls Church, VA 22041-3255
>
> OHO will inform the requester of the cost and method of payment for the transcript.

See https://secure.ssa.gov/poms.nsf/lnx/0203103200.

14

hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.'"); id. at 95 ("While it may be that substantial evidence in the record as a whole supports the conclusion that [the claimant] is not disabled, she was entitled to have that evidence evaluated by an unbiased adjudicator."). Plaintiff, however, has not provided any evidence to show that the ALJ considered Plaintiff's race in his assessment of her testimony and the medical record, or otherwise harbored any bias toward her.

The Court's independent review of the record does not reveal any indication that the ALJ or any other person in the SSA considered Plaintiff's race in assessing her disability claim. Thus, Plaintiff's claim of discrimination does not demonstrate that the ALJ's decision was not supported by substantial evidence. See, e.g., Desorte v. Commissioner of Social Security, 2019 WL 1238827, at *6 (D.N.J. 2019) (citing Richardson, 402 U.S. at 401; Daring, 727 F.2d at 70) ("This Court must review the evidence in its totality, and take into account whatever in the record fairly detracts from its weight. Plaintiff has not provided the Court with specific evidence that detracts from the ALJ's RFC assessment, which the Court finds on its independent review to be reasonable and substantially supported."); Barnes v. Commissioner of Social Security, 2018 WL

15

1509086, at *4 (D.N.J. 2018) ("Plaintiff does not make any specific contentions as to where the ALJ erred and this Court's own independent review finds no error. On the contrary, the Court's review of the ALJ's decision finds that the ALJ properly followed the standards set forth above, and that the ALJ's decision was supported by substantial evidence.").

The Court turns next to Plaintiff's claims of race discrimination against the SSA, the two administrative law judges who handled both of her disability claims, and the vocational expert who testified at the hearing for her second disability claim the separate from her disability benefits appeal. In the Court's previous Opinion, the Court noted that Plaintiff's conclusory complaint was deficient because she failed to state the jurisdictional and legal basis for her claims against the enumerated defendants or provide any facts to suggest the plausibility of her claims against them. (Docket No. 32 at 7-8.) The Court provided Plaintiff with the opportunity to file an amended complaint to cure those deficiencies, but Plaintiff has not filed an amended complaint. Consequently, Plaintiff's race discrimination claims must be dismissed for the deficiencies identified by the Court.

**III. Conclusion**

The Court finds that the ALJ's determination that Plaintiff was not totally disabled as of July 21, 2009 is supported by

16

substantial evidence.  The decision of the ALJ is therefore affirmed.  Plaintiff's race discrimination claims are dismissed.

An accompanying Order will be issued.


Date: August 2, 2019              s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.